**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JANE E. THORSBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-04-1638-F |
| | ) | |
| GENERAL MOTORS | ) | |
| CORPORATION and BEN ORTIZ, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Defendants' Motion for Summary Judgment, filed August 4, 2005 (doc. no. 32), is before the court. Plaintiff has responded, and the motion is ready for determination.[1]

Plaintiff Jean E. Thorsberg alleges a variety of employment-related claims against defendants General Motors Corporation (GM) and Ben Ortiz.[2] Mr. Ortiz was plaintiff's supervisor at GM during most of the period from late 2002 until January 2005. During this period, plaintiff worked as a router in GM's paint department. Mr. Ortiz was also plaintiff's supervisor at other times in the 1980s and 1990s. Plaintiff

---

[1]There are two additional motions pending: "Plaintiff's Motion to Strike the Affidavit of Douglas L. Hill from Defendants' Motion for Summary Judgment," filed August 31, 2005 (doc. no. 39), and "Plaintiff's Motion to Strike Inadmissible Character Evidence and Alleged Bad Acts from Defendants' Motion for Summary Judgment," also filed August 31, 2005 (doc. no. 40). Defendants have responded to both of these motions and they are ready for determination. Both motions are hereby **DENIED**. Although the court declines to strike any of the contested evidence, the parties' arguments regarding the admissibility of certain evidence have been taken into consideration. None of the rulings stated in this Order depend upon any evidence which is not properly admissible at the summary judgment stage.

[2]Mr. Ortiz's name was misspelled as "Ortez" in the Complaint. The caption of this lawsuit is hereby **MODIFIED** to show the correct spelling of Mr. Ortiz's name for purposes of this Order and all future filings.

alleges all of her claims against both GM and Mr. Ortiz.  Her sex discrimination claims consist of quid pro quo sex discrimination, disparate treatment[3] based on plaintiff's gender given allegations that male employees were provided with more opportunities to earn overtime pay, and sexual harassment as a result of a sexually hostile work environment.  Plaintiff also alleges retaliation against her for having participated in protected activity.  Finally, she alleges tort claims of negligent and intentional infliction of emotional distress, and negligent retention.  Defendants have moved for summary judgment on all claims.

Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party has the burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant.  <u>United States v. Agri Services, Inc.</u>, 81 F.3d 1002, 1005 (10th Cir. 1996).  Once the moving party has met its burden, the opposing party must come forward with specific

---

[3]The Complaint does not use the term "disparate treatment" but it is obvious from the pleadings and the briefing that plaintiff's "Fifth Cause of Action," entitled "Title VII Gender/Sex Discrimination, Retaliation/Hostile Work Environment," includes a disparate treatment sex discrimination claim based on allegations regarding the manner in which overtime opportunities were made available.  (*See*, Complaint, ¶ 34.)

evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir. 1983).

Discussion

1. <u>Quid Pro Quo Sex Discrimination</u>

The gravamen of a quid pro quo sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct. <u>Hicks v. Gates Rubber Co.</u>, 833 F.2d 1406, 1414 (10th Cir. 1987). For a quid pro quo claim to be viable, the record must at least disclose a suggestion, either explicit or implicit, that plaintiff's employment was conditioned upon plaintiff's granting of sexual favors. *See*, *id*. (upholding Rule 52(a) findings that plaintiff had not been subjected to quid pro quo sexual harassment).

Defendants argue that there is no evidence indicating that any aspect of plaintiff's employment at GM was ever conditioned upon her granting sexual favors to Mr. Ortiz, the allegedly offending individual. Plaintiff responds by citing deposition testimony in which she stated that Mr. Ortiz made sexual "comments" and sexual "advances," and that Mr. Ortiz "gave [her] the impression that...everything would be okay if I just went along with it...." (Depo at pp. 238-39.)[4] None of the testimony identified, however, suggests that any job-related consequences were ever conditioned upon plaintiff's receptiveness to any of Mr. Ortiz's alleged advances.

---

[4]All citations to deposition testimony are to plaintiff's deposition, attached to defendant's moving brief as Exhibit "A."

Plaintiff also argues that her transfer out of the paint department (which she admits was due to her seniority and general job cuts)[5] with the resulting loss of overtime pay, and her subsequent refusal to return to the paint department because Mr. Ortiz remained as a supervisor in that department, amounted to quid pro quo sexual harassment.  She argues that she lost overtime hours because Mr. Ortiz left her out of overtime assignments which she would have been entitled to receive.  None of the testimony which plaintiff cites in support of these arguments, however, suggests that any favorable treatment was ever conditioned upon plaintiff's submission to any sexual advances.

Finally, when plaintiff was questioned at her deposition about whether Mr. Ortiz had asked her to engage in sexual relations, she stated that "I can't remember off the top of my head right now."  (Depo at p. 166.)  There is no indication that plaintiff has ever updated her answer with any memory of such a proposition.  Although this testimony would not be dispositive standing alone, it confirms the court's conclusion that there is no evidence to support a quid pro quo sex discrimination claim.

In short, none of the record evidence identified by plaintiff suggests that job benefits were conditioned upon submission to requests for sexual favors or that adverse consequences followed as a result of plaintiff's refusal to submit to sexual conduct.  See, Hicks, 833 F.2d at 1414; Conatzer v. Medical Professional Building Services, Inc., 255 F. Supp. 2d 1259, 1267 (N.D. Okla. 2003) (although there was evidence regarding numerous sexually inappropriate comments to plaintiff, and

---

[5]Plaintiff has not controverted defendant's undisputed fact no. 52, which states that plaintiff and other employees were transferred from the GM paint department to the chassis department based on seniority.  Accordingly, that fact is deemed admitted.  See, LCvR56(c).  Consistent with this admission, plaintiff testified that employees were transferred from the paint department to the chassis department based purely on seniority and that this occurred while management was cutting jobs.  (Depo at pp. 166-69.)

physical contacts including two instances of a "decidedly..offensive character," there was no evidence that supervisor conditioned any favorable treatment on plaintiff's submission to physical assaults or that he explicitly or implicitly threatened plaintiff with unfavorable treatment if she refused to submit, so that Title VII claim was appropriately characterized solely as a hostile work environment claim and not as a quid pro quo claim).  The court finds and concludes that defendants are entitled to summary judgment on plaintiff's quid pro quo sex discrimination claim.

### 2.  Hostile Environment Sexual Harassment Claim

Defendants make essentially two arguments in support of summary judgment on plaintiff's hostile environment sexual harassment claim.  The first is that defendants are entitled to judgment based on the affirmative defense set forth in Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).  This defense is comprised of two elements:  1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and 2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.  Faragher, 524 U.S. at 807.

With respect to the first element, defendants rely on GM's workplace policy regarding sexual harassment.  In response, plaintiff argues that the policy is insufficient to establish that defendants exercised reasonable care as a matter of law because the policy failed to inform plaintiff that her complaint would be treated confidentially, failed to provide the name or contact information for a person in GM's management who would receive her complaints, and failed to disclose what remedies GM offered if plaintiff were subjected to sexual harassment.

With respect to the second element, defendants argue that plaintiff deliberately chose not to report a series of incidents occurring prior to August 2004, in which Mr.

-5-

Ortiz allegedly touched her, and that plaintiff excluded from her reports many of the sexual comments about which she now complains.  Defendants recognize, however, that plaintiff did report an August 26, 2004 incident described in detail later in this Order.  Furthermore, plaintiff relies on deposition testimony that GM had official notice of Mr. Ortiz's alleged proclivities as early as December of 2003, when GM received complaints from plaintiff and two other female employees regarding Mr. Ortiz's sexual comments.  (Depo at pp. 226-27.)

The court finds and concludes that there are genuine issues of material fact with respect to defendants' Faragher-Ellerth defense so that defendants are not entitled to summary judgment based on that defense.

Defendants also argue that the evidence is insufficient to support a hostile environment sex discrimination claim.  In order to find a hostile environment claim viable, the conduct complained of must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment.  Smith v. Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1412 (10th Cir. 1997), quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). The conduct must be severe or pervasive enough to create both an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile -- and an environment the victim-employee subjectively perceives as abusive or hostile.  Smith, 129 F.3d at 1413, quoting Harris v. Forklift Systems, Inc., 510 U.S. 17 at 21-22.  The court determines whether an environment is hostile or abusive by looking at the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with an employee's work performance as well as the context in which the conduct occurred.  Id., quoting Harris

at 23.  Any relevant factor may be taken into account and no single factor is required. *Id.*

Defendants' specific argument is that without the evidence which defendants argue is precluded under their <u>Faragher-Ellerth</u> affirmative defense,[6] the remaining evidence is insufficient to support a hostile work environment claim. The court has now found that defendants' <u>Faragher-Ellerth</u> affirmative defense does not preclude any claims at this stage.  Moreover, even if the court were to agree with defendants regarding their position that certain evidence is precluded, the court does  not agree that the remaining evidence is insufficient to support a hostile work environment sexual harassment claim.

For example, according to plaintiff's deposition testimony (depo at pp. 153-55), the August 26, 2004 shoving incident involved Mr. Ortiz cupping his hands or fists on his chest and saying, while forcing plaintiff to look at him, "You want to know what harassment is, Jean, I'll show you harassment."  Plaintiff testified that Mr. Ortiz yelled and screamed at her as he said this, "right in my face," while "he kept -- he bumped me in my breast."  Plaintiff testified that she was in shock, that Mr. Ortiz "had a smile on his face like he wanted me to respond" and that "when I didn't respond, that's when he charged me like a bull a second time."  She testified that he said, "'You want to know what -- you want to know what harassment is, this is harassment,'" and that he said, "I'll show you what fucking sexual harassment is.'"  Plaintiff testified that "he bumped me, and ...threw me into the back of my chair the second time."  She testified that "The third time he did it, I hit the glass wall right behind me" and that she was "scared silly at that point."  Later in her deposition (at p. 163) she explained

---

[6]Defendants would include in the precluded evidence numerous alleged sexual comments by Mr. Ortiz including comments about oral sex and sexual fantasies, and five instances of physical touching by Mr. Ortiz including one instance of "humping" plaintiff from behind.

that during the bumping incident she was "pinned up against the wall," that "it was a loud conversation," and that "[i]t was definitely sexual."

Defendants argue that this bumping incident on August 26, 2004 involved conduct "far less egregious" than conduct which was found insufficient to support a hostile work environment claim in Penry v. Federal Home Loan Bank, 155 F.3d 1257 (10th Cir. 1998). Penry involved allegations that a supervisor repeatedly made sexually offensive comments and that he leaned against the plaintiff, needlessly touching her on many occasions, and that he would often sneak up from behind and grab the plaintiff's shoulders while loudly saying her name to startle her. Penry, 155 F.3d at 1260-61. Here, taking plaintiff's version of the bumping incident and all inferences arising from her testimony as favorable to plaintiff, some of the conduct underlying plaintiff's sexual harassment claim in this case is arguably more extreme nature than the type of conduct held insufficient to support a hostile environment claim in Penry.

The court finds and concludes that, with or without the evidence which defendants argue is precluded, there are genuine issues of material fact with respect to whether plaintiff's working environment at GM constituted a sexually hostile environment so that defendants are not entitled to summary judgment on plaintiff's hostile environment claim.

### 3. Exhaustion of Remedies:

### Disparate Treatment Based on Sex and Retaliation

Defendants argue that to the extent plaintiff alleges disparate treatment because of her gender, and retaliation for having engaged in protected activity, that defendants are entitled to summary judgment because plaintiff did not exhaust her administrative remedies with respect to these claims.

A plaintiff must exhaust her administrative remedies for each individual discriminatory or retaliatory act before bringing suit under Title VII. <u>Jackson v. Exxon Mobil Chemical Corp.</u>, 2004 WL 3168283, *5 (W.D. Okla. 2004), citing <u>Gunnell v. Utah Valley State College</u>, 152 F.3d 1253, 1260 n.2 (10th Cir. 1998).

As concerns the disparate treatment sex discrimination claim, page 2 of plaintiff's EEOC general intake questionnaire, which serves as part of the charging documents[7] (moving brief, Ex. 14), states that plaintiff is claiming "gender discrimination and sexual harassment." (See references to "gender discrimination" on p. 2 in plaintiff's answer to question no. 6 on general intake questionnaire, and on p. 5 in plaintiff's answer to question no. 18 on the same questionnaire.) On p. 3 of the same form, plaintiff identifies five employees who she says were treated better than she was, four of whom are male and one of whom is Mark Taylor, an employee plaintiff testified in her deposition was provided with more overtime pay opportunities than she was. The questionnaires identify Mr. Ortiz as the offender with respect to plaintiff's sexual harassment charge and her disparate treatment gender discrimination claim.

<u>Martin v. Nannie & the Newborns, Inc.</u>, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993) notes with approval other circuits' rulings which have held that consideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of charges which were actually made. Here, the first and most logical follow-up question to plaintiff's statement on the general intake questionnaire that Mr. Taylor and other male employees were treated better than she was, would

---

[7]Defendants state that plaintiff never filed a formal EEOC charge but that the two questionnaires attached to the moving brief as Exhibits 14 and 15 may be sufficient to meet the charge requirement.

have been "in what way were each of these employees treated better than you were?"
Presumably the answer to this question would have disclosed the specifics of the
disparate treatment gender discrimination claim which plaintiff now alleges in her
fifth cause of action where plaintiff alleges that "Defendants systematically and
predominately [sic] show favoritism to males over females by providing better job
opportunities to male employees that require overtime therefore deny [sic] Plaintiff
higher pay and overtime compensation based upon her gender."

The court finds that the EEOC's investigation of statements in the
questionnaires would be reasonably expected to include investigation of how Mr.
Ortiz and GM allegedly treated Mark Taylor and other male employees better than
they treated plaintiff.  Accordingly, although it is a very close question here, where
there are no events described on the questionnaires which relate to the specifics of
plaintiff's gender discrimination claim which is based on defendants' alleged failure
to provide equal opportunities to earn overtime pay, the court finds that because the
general intake questionnaire specifically mentions "gender discrimination" and
because it lists several male employees who were "treated better" than plaintiff, the
questionnaires are minimally sufficient to put GM on notice regarding the existence
of plaintiff's disparate treatment gender discrimination claim. *See*, Gunnell, 152 F.3d
1253 at 1260 (EEOC charge, although "sparse," found "minimally sufficient").  The
court, therefore, concludes that plaintiff has exhausted her administrative remedies
regarding her sex discrimination disparate treatment claim regarding missed
opportunities to earn overtime pay.

The result is different with respect to plaintiff's retaliation claims.  There is
nothing in the EEOC questionnaires which suggests any retaliation on GM's or Mr.
Ortiz's part against plaintiff as a result of plaintiff's participation in protected

-10-

activity.[8]   Furthermore, plaintiff did not check "retaliation" as one of the types of discrimination which she was claiming (on p. 2 of the general intake questionnaire). Although failure to check this blank is not dispositive, it creates a presumption that plaintiff was asserting no retaliation claims and nothing in either of the two charge-related questionnaires suggests any retaliation claim is asserted.  (Ex. nos. 14, 15.) *See*, Gunnell, 152 F.3d at 1260 (presumption created by failure to check box for sex discrimination on supplement to EEOC charge).

The questionnaires give no notice of any type of retaliation claim, and there is no reason to think the EEOC's investigation would have discovered such an unrelated claim.  For claims to be reasonably related, an EEOC charge and a judicial complaint must, at a minimum, describe the same conduct and implicate the same individuals. Jackson v. Exxon Mobil Chemical Corporation, 2004 WL 3168283, *6 (W.D. Okla. 2004) (Judge Heaton, citations omitted).  The court finds and concludes that plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim and that her retaliation claim should therefore be dismissed.   *See also*, Duncan v. Manager, Dept. of Safety, City and County of Denver, 397 F.3d 1300, 1314 (10th Cir. 2005) (because plaintiff did not file a separate EEOC charge detailing the one plausibly adverse action by the defendant, her retaliation claim was correctly dismissed for failure to exhaust administrative remedies).

### 4.  Disparate Treatment Sex Discrimination Claim on its Merits

In addition to their exhaustion argument, defendants argue that plaintiff's disparate treatment sex discrimination claim is insufficient on its merits.  The merits of this claim are evaluated under the McDonnell Douglas framework.  The burden-

---

[8]The court has found only one instance where the word "retaliation" appears in either questionnaire.  The handwritten document attached to Ex. 15 (plaintiff's sexual harassment questionnaire) states:  "I fear retaliation from Ben and the company for calling the cops."

shifting of <u>McDonnell Douglas</u> applies because plaintiff does not rely on direct evidence of disparate treatment due to her sex, rather, she relies on circumstantial evidence of discrimination.  *See*, <u>Garrett v. Hewlett-Packard Company</u>, 305 F.3d 1210, 1216 (10th Cir. 2002) (Title VII retaliation and ADEA claims subject to <u>McDonnell-Douglas</u> test when claims based on circumstantial evidence of discrimination).  In order to establish a prima facie case of disparate treatment sex discrimination, a plaintiff must establish that she suffered an adverse employment action and that she was treated less favorably than others not in the protected class. <u>Sanchez v. Denver Public Schools</u>., 164 F.3d 527, 531 (10th Cir. 1998).  Ultimately, the issue is whether there is evidence to show[9] that gender was a determinative factor in defendants' treatment of the plaintiff.  *See*, <u>Garrett</u>, 305 F.3d at 1216 (upon proof of prima facie case, it is defendant's burden to produce a legitimate nondiscriminatory reason for its action, and plaintiff's burden to show that gender or other illegal consideration such as participation in protected activity was a determinative factor in the defendant's employment decision or that the defendant's explanation for its action was merely pretext).

There is deposition testimony from the plaintiff (depo at pp. 239-40) regarding her contention that Mr. Ortiz handled the "71 chart," a chart which pertained to overtime, in a discriminatory fashion, favoring Mark Taylor over plaintiff with respect to opportunities to earn overtime pay.  There is also testimony that Mr. Ortiz preferred

---

[9]Of course, plaintiff need not actually "show" or "prove" or "establish" anything to defeat defendants' motions.  Plaintiff must merely demonstrate the existence of a genuine issue of material fact.  Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this stage.  <u>Goodwin v. General Motors Corporation</u>, 275 F.3d 1005, 1011 at n.7 (10th Cir. 2002) (abrogated on other grounds.).

men over women when he assigned final work in the backyard[10] and that these assignments and procedures impacted overtime opportunities or double shift opportunities.  (Depo at pp. 240-41.)

Defendants also argue that denial of opportunities to earn overtime pay is not an adverse employment action.  The Tenth Circuit adopts a liberal definition of an adverse employment action, and opportunities to earn overtime pay impact an employee's compensation.  *See*, Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000) (retaliatory conduct is proscribed by Title VII if it alters the employee's compensation, terms, conditions, or privileges of employment or adversely affects his or her status as an employee). The court, therefore, rejects defendants' argument that it is entitled to summary judgment on plaintiff's disparate treatment sex (or gender) discrimination claim for lack of an adverse employment action.

In short, the court concludes that plaintiff has identified sufficient evidence to allow her disparate treatment claim to proceed to trial, to the extent that claim is based on challenges to defendants' handling of overtime opportunities.  (In the face of defendants'  properly supported motion, no other sufficient grounds for a gender discrimination claim have been identified because  there is either no evidence of any

---

[10]Plaintiff has not contested that one of the employees who was purportedly allowed extra overtime opportunities, Eva Moore, was a female and that Ms. Moore was preferred because she was a high school classmate of Mr. Ortiz and also because Mr. Ortiz wanted to sneak trucks out the door at lunch while inspectors were not working.  Defendants' und. fact nos. 32, 33.   Nevertheless, construing all inferences in plaintiff's favor, and in light of plaintiff's testimony that Mr. Ortiz gave preferential treatment to men over women when he asked them to come in and work final in the backyard during the day (depo. at p. 241), gender could have been one motivating factor in Mr. Ortiz's decisions regarding assignment of other, male employees to backyard work.

adverse action or there is no evidence to support a prima facie case, a finding of pretext, or a discriminatory motive.)[11]

## 5. Retaliation Claim on its Merits

Although this court has already found that plaintiff's retaliation claims should be dismissed for failure to exhaust her administrative remedies, the court wishes to provide an alternative ruling with respect to these claims, and so this Order briefly addresses the sufficiency of those claims on their merits.

The McDonnell-Douglas framework also applies to plaintiff's retaliation claim or claims. Stover v. Martinez, 382 F.3d 1064, 1071. To establish a prima facie retaliation claim, plaintiff must show that she engaged in protected opposition to discrimination, that she was subjected to an adverse action by the employer following the protected activity, and that a causal connection exists between the protected activity and the adverse action. Archuleta v. Colorado Dep't of Inst., 936 F.2d 483, 486 (10th Cir. 1991). Although it is unclear from the complaint whether plaintiff intended to assert both a disparate treatment retaliation claim and a hostile environment retaliation claim,[12] in either event, plaintiff has not identified any

---

[11]For example, alleged touching and comments by Mr. Ortiz do not support a disparate treatment claim because there is no adverse employment action. And plaintiff cannot rely on her initial transfer to chassis work to support a disparate treatment claim because it is undisputed that this transfer was purely for reasons of seniority. See defendants' und. fact nos. 52-54 and depo at 166-67. The only evidence which plaintiff cites in her response brief (at p.12) to support her claim that Mr. Ortiz left her out of overtime assignments is testimony (depo at pp. 238-42) which concerns the "71 chart" and assignment of backyard finish work.

[12]The titles of plaintiff's first and fifth causes of action suggest plaintiff may have intended to assert quid pro quo retaliation and retaliation by creation of a hostile work environment. There is no such thing as a quid quo pro retaliation claim, and it us unclear whether there is a hostile work environment retaliation claim. See, Stover, 382 F.3d at 1071 (district court analyzed retaliation claims as both separate adverse employment actions and also in the aggregate as constituting a hostile work environment claim; on appeal, plaintiff argued it was error to analyze retaliation claims under hostile work environment standard as opposed to "a retaliation standard"; given plaintiff's

(continued...)

evidence to support such a claim.  Accordingly, should a reviewing court disagree with this court's conclusion that plaintiff's retaliation claims must be dismissed for failure to exhaust administrative remedies, the court finds that defendants would be entitled to summary judgment on plaintiff's retaliation claims based on the lack of evidence to support those claims on their merits.

6.  State Law Tort Claims

Defendants make a variety of arguments as to why they are entitled to summary judgment on plaintiff's various state law tort claims.  Those state law claims consist of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention.

Defendants first argue that Section 301 of the Labor Relations Management Act, 29 U.S.C. § 185(a), pre-empts plaintiff's state law claims.  Defendants contend these claims are pre-empted because they are substantially dependent upon an analysis of the terms of the collective bargaining agreement which it is undisputed governs the terms and conditions of plaintiff's employment at GM.

The pre-emption issue involves the question of which claims directly relate to either explicit or implied rights derived from the collective bargaining agreement. Johnson v. Beatrice Foods Co., 921 F.2d 1015, 1020 (10th Cir. 1990). Discussing whether Oklahoma's tort of intentional infliction of emotional distress is pre-empted by § 301, Johnson states that Oklahoma law requires all aspects of a plaintiff's employment, including the terms of a collective bargaining agreement, to be considered when evaluating whether the defendants' conduct was outrageous. *Id.*  In the instant case, some of the challenged conduct -- for example, the alleged August 26, 2004 incident -- would presumably  have no relationship to the collective

---

[12](...continued)
argument on appeal, the Circuit proceeded to analyze plaintiff's claims "as retaliation claims.").

bargaining agreement, while determination of the outrageousness of other conduct -- such as the manner in which overtime pay opportunities were assigned -- might be substantially dependent upon analysis of the collective bargaining agreement.

This case presents a variety of conduct as the basis of plaintiff's claims, yet defendants offer no detailed analysis of which claims are inextricably intertwined with which provisions in the collective bargaining agreement and no part of the collective bargaining agreement is cited in the briefs. *See*, Johnson, 921 F.2d at 1019 (quoting Allis-Chalmers, 471 U.S. at 213, for the rule that the "focus" with regard to pre-emption by § 301 is "whether the tort confers non-negotiable state-law rights...independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"). The court concludes that the LMRA pre-emption question is more appropriately decided based on a full evidentiary record. If defendants press their pre-emption argument at trial, a claim-by-claim analysis of which underlying conduct is alleged as the basis for each tort, and which, if any, of that conduct is inextricably intertwined with consideration of the collective bargaining agreement and why, will likely be required.

For these reasons, the court finds that defendants are not entitled to summary judgment on any of plaintiff's state law tort claims based on defendants' LMRA pre-emption argument. Nothing stated in this Order is intended to pre-judge in any way the merits of a LMRA pre-emption defense. Resolution of the merits of that defense is deferred completely until a later stage.

Defendants also argue that plaintiff's tort claims are pre-empted by Oklahoma's workers' compensation law. Title 85 O.S. § 12 provides exclusive liability under workers' compensation laws with respect to liability prescribed by § 11. Section 11 provides liability "for the disability or death of an employee resulting from an

-16-

accidental personal injury sustained by the employee arising out of and in the court of employment...."

In some circumstances, an intentional infliction of emotional distress tort may be precluded by workers' compensation laws when that tort arises out of on-the-job exposures. *See, e.g.,* <u>Griffin v. Baker Petrolite Corporation</u>, 99 P.3d 262, 266 (Okla. Ct. App. 2004) (risk of exposure to airborne chemicals was a risk of employment and intentional infliction of emotional distress tort based on employer's allegedly negligent or intentional failure to abate ethylene oxide leaks  was precluded by employee's pursuit of workers compensation claim for those injuries).  In contrast to <u>Griffin</u>, however, plaintiff's tort injuries do not arise from the type of job-related occurrence usually covered by workers' compensation laws.  In <u>Anderson v. Save-A-Lot, LTD,</u> 989 S.W. 2d 277(Tenn. 1999), the court surveyed the law from other jurisdictions which have addressed the issue of whether injuries alleged to have resulted from sexual harassment are within purview of workers' compensation laws. After a lengthy discussion, the <u>Anderson</u> court concluded that sexual harassment injuries were not covered by Tennessee's workers' compensation laws because the challenged conduct was purely personal and was not related to furthering the business of the employer.  The court also observed that  workers' compensation laws further different interests than those furthered by sexual harassment laws, further supporting its ruling with these types of public policy considerations.  *Id.* at 289-90.

Here it is undisputed that GM had a policy against sexual harassment. discrimination.  (Depo Ex. 1.)  The conduct which underlies the torts alleged by plaintiff is not related to furtherance of GM's business and did not result, in the language of 85 O.S. § 11, "from an accidental personal injury sustained by the employee arising out of and in the course of" her employment in the usual sense. Rather, the challenged conduct and comments by Mr. Ortiz are conduct and comments

which are, in the context of this discussion, personal to him.  For these reasons, and for based on the policy considerations discussed in <u>Anderson</u>, the court concludes that, at least in the circumstances of this action, there is no pre-emption by Oklahoma's workers' compensation laws of the torts alleged by plaintiff.        Defendants next argue that although plaintiff alleges both negligent and intentional infliction of emotional distress, that negligent infliction of emotional distress is not an independent tort in Oklahoma, rather, it is simply the tort of negligence. *See,* <u>Wilson v. Muckala, MD</u>, 303 F.3d 1207, 1213 (10th Cir. 2002) (Oklahoma recognizes no tort for negligent infliction of emotional distress separate from the tort of negligence).  Defendants argue that because plaintiff has not alleged any specific duty or breach of that duty, she cannot proceed with her negligence claim.  Defendant Ortiz also points out (moving brief, p. 24, n.10), that although plaintiff appears to be alleging a negligence claim against him as an individual, all of her claims against him involve alleged intentional conduct, making negligence theories inapplicable.  Plaintiff does not respond to either of these arguments and the court finds that she has confessed them. LCvR7.2(f).

Defendants also argue that the alleged conduct which underlies plaintiff's tort claims is the same conduct which is challenged in plaintiff's discrimination claims so that plaintiff's rights and remedies under state law "may be preempted by Title VII itself." (Moving brief, p. 23, n.9.)  Defendants cite no Tenth Circuit authority for this proposition.  In light of cases which allow both discrimination claims and state tort claims to proceed to trial, it appears that the Tenth Circuit would allow plaintiff's state tort claims to go to trial along with her federal discrimination claims.  *See*, <u>Daemi v. Church's Fried chicken, Inc.</u>, 931 F.2d 1379 (10th Cir. 1991) (national origin discrimination case in which the Circuit upheld the district court's rejection, after a bench trial, of an Oklahoma intentional infliction of emotional distress claim because

plaintiff had failed to establish the elements of that claim by a preponderance of the evidence).   Accordingly, the court concludes that defendants are not entitled to summary judgment based on any pre-emption of state torts by Title VII, despite the overlapping conduct which gives rise to both the federal and state claims.

Defendants also argue that there is insufficient evidence to support plaintiff's negligent retention claim because there is no evidence to show GM knew about Mr. Ortiz's alleged conduct.   Consistent with findings already stated in this Order about charges which plaintiff and two other female employees made regarding Mr. Ortiz's "sexual comments" as early as  December of 2003, the court rejects this ground for summary judgment. (Depo at p. 226; *see also*, plaintiff's response to defendant's fact no. 30 and citations to record evidence there, response brief at p. 3.)

Finally, defendants argue that there is insufficient evidence to support plaintiff's intentional infliction of emotional distress claim because there is no evidence of any conduct sufficient to meet the strict standards of proof required for that claim.  Despite the court's recognition of the rigorous proof required to support this tort, in light of plaintiff's testimony about the August 26, 2004 incident and other evidence, the court finds that there are genuine issues of material fact which preclude summary judgment on plaintiff's intentional infliction of emotional distress claim.  The court is mindful, however, of its responsibility, clearly articulated by the Oklahoma cases defining the tort of intentional infliction of emotional distress, to carefully scrutinize the quality of the evidence supporting that claim.  Accordingly, the claim for intentional infliction of emotional distress will again be carefully evaluated by the court at the Rule 50 stage.

## Conclusion

After careful consideration of the parties' submissions, the pleadings, the record, and the relevant authorities, the court rules as follows.

Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.  Specifically, the motion is granted to the following extent.

Defendants GM and Mr. Ortiz are entitled to judgment as a matter of law on Ms. Thorsberg's quid pro quo sexual harassment claim.

Defendants GM and Mr. Ortiz are entitled to dismissal without prejudice for failure to exhaust administrative remedies with respect to all aspects of Ms. Thorsberg's retaliation claim.  This includes any quid pro quo retaliation claim which plaintiff may have intended to allege, and any claim for retaliation by way of disparate treatment or by retaliatory hostile work environment.  As an alternative to dismissal of these claims, GM and Mr. Ortiz are entitled to judgment as a matter of law on the merits of Ms. Thorsberg's retaliation claim or claims.

Defendants GM and Mr. Ortiz are also entitled to judgment as a matter of law on Ms. Thorsberg's negligent infliction of emotional distress claim.

Two final matters require discussion.  Although not set out in a separate proposition, defendant Ortiz argues that he is entitled to summary judgment to the extent that any of Ms. Thorsberg's claims are alleged against him under Title VII.  Citing Butler v. City of Prairie Village, 172 F.3d 736, 743-44 (10th Cir. 1999), Mr. Ortiz observes that it is settled law that claims based on federal anti-discrimination statutes may not be brought against supervisors in their individual capacities.  Plaintiff has not responded to this argument and the court finds that it has been confessed.  LCvR72(f).  This ruling means that Mr. Ortiz is entitled to summary judgment on any Title VII-based claims which would otherwise survive this Order, that is, on plaintiff's claim of sexual harassment hostile work environment claim and plaintiff's Title VII disparate treatment sex (or gender) discrimination claim.

The last matter which remains for discussion is taken up sua sponte.  Although Ms. Thorsberg's fourth cause of action alleges negligent retention against both

"defendant*s*," a negligent retention claim only makes sense as against GM because Mr. Ortiz cannot have negligently retained himself and the Complaint and briefing make clear that it is Mr. Ortiz's retention about which plaintiff complains. Accordingly, the court finds that to the extent Ms. Thorsberg intended to allege negligent retention against Mr. Ortiz individually, Mr. Ortiz is entitled to summary judgment on that claim.

The above rulings leave the following claims as surviving for trial:

1.      Plaintiff's hostile work environment sex discrimination claim against defendant GM only.  (Second cause of action.)

2.      Plaintiff's disparate treatment sex (or gender) discrimination claim against defendant GM only, to the extent this claim is based upon GM's handling of opportunities to earn overtime pay but not including any claim based on plaintiff's initial assignment from the paint department to the chassis department.  (See n.11.) (Fifth cause of action.)

3.      Plaintiff's intentional infliction of emotional distress claim against defendants GM and Mr. Ortiz.  (Third cause of action.)

4.      Plaintiff's negligent retention claim against defendant GM only. (Fourth cause of action.)

Dated this 4th day of October, 2005.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-1638p009(pub).wpd